AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20) ☐ Original ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
04/03/24
CENTRAL DISTRICT OF CALIFORNIA
BY: _____IGU_____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

**FILED**
April 3, 2024
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY: Nancy Boehme
Deputy Clerk, U.S. District Court

United States of America

v.

CIERA MONIQUE STOELTING,

Defendant

Case No. 8:24-mj-00156-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) June 19, 2023 to February 8, 2024, in the county of Orange in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 (a) (1), (b) (1) (A) (viii) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Farshid Hashempour
Complainant's signature

Farshid Hashempour, Task Force Officer (FBI)
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: April 3, 2024

Judge's signature

City and state: Santa Ana, California

Hon. Douglas F. McCormick U.S. Magistrate Judge
Printed name and title

AUSA: Melissa S. Rabbani (714) 338-3499

**AFFIDAVIT**

I, Farshid Hashempour, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Detective with the Santa Ana Police Department ("SAPD") and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI"). As a TFO with the FBI, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I am assigned to the Orange County Violent Gang Task Force ("OCVGTF"). The OCVGTF is composed of federal and local law enforcement agencies, including, but not limited to, the FBI, the SAPD, and detectives from the Anaheim Police Department. The OCVGTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, the Mexican Mafia, and other violent criminal organizations in Orange County. Prior to this assignment with the FBI, I was a SAPD Police Officer and have been so employed for approximately twenty-two years.

3. I have specialized training and experience in investigations involving narcotics and firearms trafficking. During my tenure as a Police Officer, as well as an FBI TFO, I have conducted and participated in numerous investigations of

criminal activity, specifically including narcotics and firearms trafficking and violent offenses committed by street gangs.

## II. PURPOSE OF AFFIDAVIT

4.  This affidavit is made in support of a criminal complaint and arrest warrant against CIERA MONIQUE STOELTING, ("STOELTING") for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (Possession with Intent to Distribute Methamphetamine) (the "SUBJECT OFFENSE").

5.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest and search warrants, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

6.  Between June 19, 2023, and February 8, 2024, STOELTING was arrested on three separate occasions in the city of Santa Ana, California.  In all three arrests, Santa Ana Police Department ("SAPD") Police Officers conducted investigations involving STOELTING in which she was arrested and found to be in possession of a large quantity of narcotics.

7.  On June 19, 2023, SAPD Officers observed a Chevrolet pick up truck with an illegal plastic cover obstructing the license plate.  As the Officers made a U-turn to conduct a

traffic stop, they observed the pick up take off at high rate of street.  The driver of the vehicle, later identified as STOELTING, led the Officers on a long vehicle pursuit that lasted approximately 25 minutes.  The vehicle was eventually disabled, and STOELTING was taken into custody without incident.  During the pursuit, SAPD Officers observed STOELTING throwing what appeared to be narcotics from the truck.  Responding Officers were able to retrieve the discarded narcotics, which were found to weigh approximately 503 grams of a substance believed to be methamphetamine.

8.   On August 7, 2023, SAPD Officers conducted a traffic stop on a vehicle that was being driven by STOELTING.  STOELTING exited her vehicle and refused to obey the Officers' basic commands.  For safety purposes, STOELTING was placed in handcuffs and seated to the rear of the patrol vehicle.  In plain view, an Officer observed a large glass pipe on the passenger seat of STOELTING's car.  The Officer recognized this item as narcotics paraphernalia.  A subsequent search of the vehicle for narcotics revealed two bags of a white crystalline substance resembling methamphetamine under the driver's seat.  The weight of both bags totaled approximately 144 grams of methamphetamine.

9.   On February 8, 2024, SAPD Officers conducting a patrol check in a hotel parking lot observed two cars parked next to each other.  The Officers contacted the drivers of both vehicles because they both exhibited license plates with expired registration.  One of the drivers was identified as STOELTING,

who said she was staying at the hotel.  Before conducting a pat-down search, STOELTING informed the Officer that she had narcotics on her person.  The Officer found two Ziploc bags containing an off-white crystalline substance in the pocket of her sweater.  When asked if there were narcotics in the vehicle, STOELTING responded, "I believe so."  During a subsequent search of the vehicle, the Officer found approximately three pounds of suspected methamphetamine and 52 grams of a substance believed to be fentanyl.

### IV. STATEMENT OF PROBABLE CAUSE

#### A. Arrest on June 19, 2023

10.  On or about June 19, 2023, at 2:20 a.m., SAPD Officer M. Brodeur and Officer T. Booth were working in a uniformed capacity when they conducted a patrol check in the area of Silver Drive and Euclid Street, in the city of Santa Ana.  The Officers had known that 5222 West Silver Drive was a residence being used as an illegal gambling establishment commonly referred to as a "net" or "slap house".

11.  While traveling west on Silver Drive from Euclid Street, Officer Booth observed a newer model Chevrolet pickup, bearing California License number 75809H3, idling on the along north curb line of Silver Drive.  The truck had an illegal plastic cover obstructing the license plate, a violation of California Vehicle Code ("CVC") 5201.1, and also had tinted front windows, a violation of CVC 26708.  The patrol unit initially passed the truck before making a U-turn in order to conduct a traffic stop for the aforementioned vehicle code

violations. As the patrol unit turned around, Officer Booth observed the truck continue south on Euclid Street through the stop sign, a violation of CVC 22450, at a high rate of speed. Officer Booth initiated his overhead lights and siren to attempt the traffic stop, however, the truck continued southbound on Euclid Street through a red light, thus initiating a vehicle pursuit.

12. The vehicle pursuit traversed the cities of Santa Ana, Fountain Valley, Garden Grove and Huntington Beach. During the course of the pursuit, Officer Booth observed the driver, later identified as STOELTING, discard what appeared to be multiple plastic baggies and containers of suspected narcotics out the driver's window of the pickup truck. SAPD Officers monitoring the vehicle pursuit responded to the various areas identified by Officer Booth and Officer Brodeur in an effort to collect the evidence. Garden Grove Police Department Officer L. Devila deployed spike strips in the area of Bolsa Avenue and Starboard Street, which successfully disabled the front right tire of the pickup. In total, the pursuit continued for approximately 30 miles before the pickup came to a stop in the parking lot of 10921 Westminster Avenue, in the city of Garden Grove.

13. After STOELTING's arrest at the termination of the pursuit, SAPD Officer J. Smith recovered multiple plastic baggies containing an off-white crystalline substance resembling methamphetamine from the area of Euclid Street and Hazard Avenue, in the city of Santa Ana. The baggies were later weighed at SAPD and totaled 225.3 grams. Additionally, Officer Hanley

of the Huntington Beach Police Department found a large amount an off-white crystalline substance resembling methamphetamine scattered in the roadway of Warner Avenue and Nichols Lane, in the city of Huntington Beach. The suspected methamphetamine had been ripped out of its originally packaging, which had to be collected with a broom. The substance and street gravel was later found to weigh 278.4 grams. A clear plastic bag containing approximately 10.1 grams of an off-white crystalline substance was also found in the pickup truck driven by STOELTING.

14. STOELTING was transported to the Santa Ana Jail, where Officer Booth read her Miranda Rights. STOELTING acknowledged her Miranda Rights and stated that she knew the police unit wanted to initiate a traffic stop when she initially fled from the area of Silver Drive and Euclid Street. STOELTING confirmed that she was in possession of the narcotics with the intent to sell them, adding she threw the substance out of the car in order to destroy the evidence. STOELTING admitted that to discarding the methamphetamine and a digital scale. STOELTING estimated that prior to the traffic stop, she believed she had approximately a half pound of methamphetamine that she had purchased for $200. STOELTING said that most of the methamphetamine was "fronted", or advanced to her with the promise to pay at a later date. STOELTING added she has been selling methamphetamine for approximately five years. When asked if her cellphone was ever used to coordinate the sale of controlled substances, STOELTING confirmed that she had multiple conversations discussing the sales of narcotics.

**B.  Arrest on August 7, 2023**

15.  On August 7, 2023, SAPD Officer Brodeur and Officer S. Poti were conducting a proactive patrol check in the area of Silver Drive and Euclid Street, the City of Santa Ana.  While conducting their patrol check, Officer Brodeur and Officer Poti heard Corporal I. Vera and Officer K. Chavez conduct a traffic stop on a 2022 Nissan Sentra in the area of Henderson Place and Cooper Street, in the city of Santa Ana. The driver was identified as STOELTING, who was familiar to Officer Brodeur from the pursuit and narcotic investigation on June 19, 2023. Officer Chavez told Officer Brodeur that they observed STOELTING driving at a high rate of speed southbound on Cooper Street from Silver Drive, failing to stop for a stop sign at the intersection of Cooper Street and 1st Street.

16.  After the traffic stop, STOELTING was immediately verbally aggressive and belligerent with the Officers. STOELTING stepped out of her vehicle and refused to obey basic commands.  Due to her uncooperative behavior, Corporal Vera and Officer Chavez handcuffed STOELTING and seated her in the back of a patrol vehicle for the remainder of the investigation. Officer Brodeur approached the Nissan Sentra and observed a large blue glass pipe in plain view on the front passenger seat. Based on his training and experience, Officer Brodeur recognized this paraphernalia used to smoke narcotics, in violation of California Health and Safety Code 11364.

17.  During the search of STOELTING's vehicle for narcotics, Officer Poti located a small "Star Wars" tin

container underneath the driver's seat. Inside the container, Officer Poti observed a large bag an off-white crystalline substance with a smaller black box.  Inside the small black box was a smaller bag of an off-white crystalline substance.  Officer Brodeur recognized both items as resembling methamphetamine.  I observed the baggies and based on my training and experience, I determined the substance to be Methamphetamine. A brown wallet was located inside the vehicle's center console, which contained $1,325 in United States Currency.  The contents of the two bags believed to be methamphetamine were later weighed and found to total approximately 144 grams.

    18.  Officer Brodeur read STOELTING her Miranda Rights from his department issued officer index book.  STOELTING acknowledged her rights and told Officer Brodeur that she was in the area of to visit one of her children, who lives with their biological father in the city of Santa Ana.  STOELTING said there was four ounces of Methamphetamine in the bags she bought in different locations, one in Monrovia and the other in Victorville, California.  STOELTING claimed that the methamphetamine was for personal use, and stated that the amount would last her the entire week.  During this interview, STOELTING made statements about the previous arrest on June 19, 2023, in which she claimed to be a bait vehicle that attempted to draw the attention of the Officers away from a second vehicle that had unknown contraband or weapons.

**C.    Arrest on February 8, 2024**

19.    On February 8, 2024, at approximately 12:30 p.m., SAPD Officer J. Park and Officer M. Smith were working with the AB 109 Task Force were conducting proactive enforcement at the Comfort Inn & Suites located at 2620 South Hotel Terrance, in the city of Santa Ana.  This specific area has experienced an increase in criminal activity to include narcotics use and sales, stolen vehicles, weapons violations, wanted persons, trespassing and other quality of life issues.

20.    Upon entering the rear parking lot of the Comport Inn & Suites, Officer Park and Officer Smith observed two vehicles parked next to each other.  The first vehicle was a 2006 Dodge Magnum with California license plate number 5UCR683, and the other was a 1999 Honda Accord, bearing California license plate number 8XTW614.  The Dodge Magnum's registration had been expired since May 2, 2023, while the Honda Accord's registration had been expired since September 8, 2023.  The Officer noticed that both driver seats to the two vehicles were occupied.  The driver of the Dodge was later identified as Ferdinand Lozada, and the driver of the Honda was later identified as STOELTING. Officer Smith contacted Lozada while Officer Park walked between the two cars and asked STOELTING if she had a room at the hotel. STOELTING responded, "yeah, we're checking out already". When Officer Park asked STOELTING to clarify the term "we", she referred to Lozada as her boyfriend.  STOELTING acknowledged that her vehicle registration was expired, and that she needed to take it in for a smog check in order to renew the registration.

STOELTING complied when Officer Park asked her to exit her vehicle and have a seat on the curb.

21. STOELTING told the Officer that the Honda was not registered to her, but was still registered to the person from whom she purchased it. During his conversation with STOELTING, Officer Smith removed Lozada from his vehicle and had him sit next to her on the curb. As Officer Smith conducted a records check of Lozada and STOELTING, Officer Park asked STOELTING to stand up for a pat-down search for weapons. When Officer Park asked STOELTING to put her hands behind her back, STOELTING attempted to put both her hands inside of her sweater pocket. Officer Park told STOELTING to stop, and placed her hands behind her back. Prior to conducting the search, Officer Park asked STOELTING if she had anything illegal. STOELTING replied, "I do have drugs on me." When asked what kind of drugs, STOELTING told Officer that she had "meth", which is a common abbreviation for methamphetamine. STOELTING indicated that the methamphetamine was in her sweater pocket.

22. Officer Park reached into the sweater pocket and removed a plastic Ziploc bag, which contained an off-white crystalline substance resembling methamphetamine. Officer Park found an additional Ziploc bag of a substance resembling methamphetamine in the same sweater pocket. Both plastic bags looked identical and appeared to contain a similar quantity of methamphetamine. STOELTING was handcuffed before being seated back on the curb next to Lozada. Both plastic bags containing

the substance believed to be methamphetamine were later found to each weigh approximately 30 grams.

23. When STOELTING was then asked if she had any drugs in her car, she responded "Probably, I don't know." Officer Park specifically asked STOELTING if there was more methamphetamine in the vehicle. STOELTING stated, "I believe." I asked her if there was more meth in the car and she said "I believe". STOELTING told Officer Park that she did not believe there was any fentanyl in the vehicle.

24. Officer Park conducted a search of STOELTING's Honda Accord, and found a black backpack on the center console area. Inside the backpack, Officer Park found a white pouch with different colored polka dots that contained a digital scale and a clear plastic Ziploc bag containing a clumpy white powdery substance resembling fentanyl. As Officer Park removed items from the black backpack, STOELTING identified items he was removing leading him to believe the black backpack belonged to her. In the backseat of the Honda Accord, Officer Park found a safe, which contained numerous plastic bags containing an off-white crystalline substance believed to be methamphetamine. Officer Park also found an additional plastic bag containing a substance believed to be fentanyl as well as a digital scale and a single shot .22 caliber folding gun with no serial number. The total approximate weight of all the plastic bags of the substance believed to be methamphetamine that was located in the safe was 872 gross grams.

25. Officer Smith read STOELTING her Miranda Rights from a Santa Ana Police Officer's Index. STOELTING understood her rights and said she was in possession of the methamphetamine for her own personal use. STOELTING told Officer Smith she uses approximately one to two ounces of methamphetamine a day, which seemed highly unlikely to the Officers. STOELTING also said that she shared methamphetamine with her friends. When asked about the methamphetamine in the safe, STOELTING said it belonged to a person named "Vincent". STOELTING was only able to describe "Vincent" as Filipino. When confronted with the fact that the packaging of the suspected methamphetamine found in her pockets was the same as that of the packaging in the safe, STOELTING told the Officers that had purchased two bags from "Vincent". STOELTING eventually admitted to selling the narcotics. STOELTING said she would consume half of the bag of methamphetamine for herself and sell the remaining half. STOELTING stated she sold the methamphetamine in order to purchase food and rent rooms at hotels or motels to avoid having to stay on the streets.

**D.   Drug Analysis**

26. The narcotics seized during these investigations were later sent to the DEA Southwest Lab for quantitative and qualitative analysis. A total of eight evidence exhibits were sent to the lab, which consisted of six exhibits of suspected methamphetamine, one exhibit of suspected fentanyl, and one exhibit of suspect Ecstasy pills. The lab results for these exhibits is still pending analysis by the lab.

27. Based on my training and experience, which includes observing methamphetamine and fentanyl, I submit that there is probable cause to believe that the narcotics from STOELTING are in fact methamphetamine and fentanyl. Additionally, based on my training and experience, I believe that the amounts of 56.1 grams of fentanyl and 2137 grams of methamphetamine are more than would be possessed for personal consumption, and that possession of that amount of each drug shows that they were possessed for the purpose of distribution.

## V. CONCLUSION

28. For all the reasons described above, there is probable cause to believe that STOELTING in a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (Possession with Intent to Distribute Methamphetamine) (the "SUBJECT OFFENSE").

/s/ Farshid Hashempour
FARSHID HASHEMPOUR
Task Force Officer
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 3rd day of April, 2024.

HONORABLE DOUGLAS F. MCCORMICK
UNITED STATES MAGISTRATE JUDGE